UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEWEL EVERN DYER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DEYING LI, et al.,<br><br>　　　　　Defendants. | Case No. 24-cv-00164-JSC<br><br>**ORDER OF DISMISSAL** |

## INTRODUCTION

Plaintiff, an inmate in the Mendocino County Jail who is proceeding without representation by an attorney, filed this civil rights complaint under 42 U.S.C. § 1983. The complaint was dismissed with leave to amend, and Plaintiff has filed an amended complaint. (ECF Nos. 15, 18.) He sues his former landlady and a number of other tenants in a building in Ukiah, California, where Plaintiff used to live, parole officials in Ukiah, the "Ukiah Parole Unit," the Ukiah Police Department. ("UPD"), and two UPD officers.[1] (*Id.* at 3-7.) For the reasons explained below, the amended complaint does not cure the deficiencies in the original complaint, and therefore the case is DISMISSED for failure to state a claim that is capable of judicial determination.

## BACKGROUND

In the original complaint, Plaintiff set forth a lengthy narrative involving his former landlady and co-tenants, as well as various parole searches and his arrests for violating parole. (*See generally* ECF No. 1.) The Court summarized these allegations as follows:

　　Plaintiff alleges between November 2022 and March 2023,

---

[1] As explained in greater detail below, some of the individual Defendants are named, while others are unnamed "Doe" Defendants.

while on parole, he lived in a building in Ukiah, California, where he was in a "love triangle" with his landlady (Defendant Deyeng Li) and several other tenants (Defendants Brian Linehart and unnamed "Doe" Defendants). (ECF No. 1 at 7.) The majority of Plaintiff's factual allegations consists of a lengthy narrative about these Defendants that touches on a wide range of topics, including their romantic relationships, drug use, arguments, threats, fights, theft, sexual assault, kidnapping and murder of a tenant's homeless son, cooking, noise, mail, computer hacking, theft of data, interference with internet access, spying via hidden cameras, inadequate window coverings, and loss of personal property. (*Id.* at 7-17.)

As noted above, Plaintiff also includes as Defendants the Ukiah Police Department ("UPD"), and several Defendants involved in his parole (hereinafter referred to collectively as the "Parole Defendants"): the "Ukiah Parole Unit," a supervisor in this parole unit named Thomas Porter, another unnamed parole "co-supervisor," and an unnamed "desk clerk" in the parole office. (*Id.* at 3 ¶ 5; 5 ¶¶ 10-12.) He alleges on December 9, 2022, he "checked in" with his parole office in Ukiah, California, for the first time, and the "desk clerk" was "gossipy and laughing." (*Id.* at 8 ¶ 27.) He alleges "[t]hat day began a series of harassing/illegal (all-of-the-sudden) drug testing" when the unnamed "co-supervisor" in the parole office "forced me to urinate" and "coerced me under threat of jail time . . . to admit that I somehow took Meth even though I assured her it was my Noxipro and Bromantine." (*Id.* at 8 ¶ 28.) He alleges these are "adhd drugs/alzheimer's drugs," and they "trigger[ed] false positives for methamphetamine" on "the [parole] department's archaic urinalysis and 'see-eye' tests" between December 2022 and March 2023. (*Id.* at 7-8 ¶ 25.)

Plaintiff alleges Defendant Porter, a parole supervisor, lived next door to him. (*Id.* at 8 ¶ 26.) During a parole "check in" on December 19, 2022, Porter allegedly told Plaintiff "he needs to put me in an ankle monitor program . . . in order to get me off parole faster" and that Defendant Li is "his dream girl." (*Id.* at 11 ¶ 40.) Plaintiff alleges on March 13, 2023, he checked in for parole again, and Porter "scream[ed], . . . 'I own this house' and 'Go die already.'" (*Id.* at 17 ¶ 66.55555.)

Plaintiff also makes allegations regarding arrests and serving time in jail for parole violations. He alleges on January 29, 2023, he was arrested for violating parole by possessing and using illegal drugs,[2] and released on bail on March 1, 2023. (*Id.* at 13 ¶ 46, 14 ¶¶ 48-49.) He alleges "obviously Mendocino County Jail, Mendocino Superior Court, Mendocino Sheriff's Office, and Mendocino Parole cooperated to illegally detain me. Otherwise I should have been able to bail myself out for a constitutional amount or motioned for speedy trial. Way sooner. Or challenged my drug tests. Obviously a conspiracy is involved." (*Id.* at 13 ¶ 46.) On March 8, 2023, Defendant UPD arrested him for possession of a knife, and he was

---

[2] Plaintiff alleges "the mountain of white powder [officers] found was pure Vitamin E powder gifted to me by my chiropractor." (ECF No. 14 at ¶ 48.) Plaintiff does not allege who carried out this arrest.

2

|   |   |
|---|---|
| 1 | released on March 12, 2023.  (*Id.* at 15 ¶¶ 57, 60.)  He alleges in April 2023, the UPD conducted a "spammed search" and "found stolen property (supposed) that I had accumulated by mistake." (*Id.* at 17 ¶ 66.555.)  He further alleges that he received a one-year term in jail for violating parole, but he does not allege when he began serving this term.  (*Id.* at 14 ¶ 48; 17 ¶¶ 66.5, 66.55555.) |
| 2 | |
| 3 | |
| 4 | Plaintiff claims Defendants violated his constitutional rights due to the "unsafe conditions" in the building he lived in; an "artificial" and "secured under threat" conviction and sentence for violating parole conditions; the murder, rape, and kidnapping of a (non-Defendant) tenant and her son; Plaintiff's loss of personal property; and "spying" on Plaintiff in the home.  (ECF No. 1 at 18-19 ¶¶ 67-71.)  He seeks damages, an injunction to release him from jail and file murder charges (it is not clear against whom), and declaratory relief.  (*Id.* at 19-20 ¶¶ 73-78.) |
| 5 | |
| 6 | |
| 7 | |
| 8 | |

(ECF No. 15 at 1:23-3:15 (footnote in original).)

The amended complaint sets forth allegations and claims that are substantially the same as those in the complaint.  (ECF No. 18 at 1-28 (setting forth lengthy narrative regarding sex, spying, hacking, murder, theft, threats, searches, arrests, and threats by his former landlady, other tenants, parole officers and UPD officers); at 28-33 (listing claims violating constitutional rights).)

**STANDARD OF REVIEW**

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must identify legally viable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief."  *Id.* § 1915A(b).  Pleadings filed by unrepresented parties must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rules of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).  Although to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must

3

be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n.*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a "right secured by the Constitution or laws of the United States" was violated and (2) that the alleged violation "was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## LEGAL CLAIMS

### A.   Claims Against Private Parties

The amended complaint repeats the claims from the original complaint that his former landlady (Defendant Li), former fellow-tenant Defendant Brian Linehart, Linehart's brother Luke Linehart, and several other tenants whom he identifies as "Doe" Defendants,[3] violated his constitutional rights by spying on him, threatening him, stealing his property, and murdering the son of another tenant. (*Compare* ECF No. 18 at 28-33 ¶¶ 1, 4-6, 10-12, and ECF No. 1 at 18-19.)

As explained in the order of dismissal with leave to amend,

> A private individual does not act under color of state law, an essential element of a Section 1983 action. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (holding there is no right to be free from the infliction of constitutional deprivations by private individuals). As the landlady and tenants of Plaintiff's former building are private individuals, not government officials who acted under color of state law, Plaintiff cannot sue them under Section 1983. Therefore, Plaintiff's claims against these private individuals for alleged conditions in his former building, crimes committed against another tenant and her son, theft of his property, and spying, are not capable of judicial determination.

(ECF No. 15 at 4:18-26.)

In his amended complaint, Plaintiff continues to pursue claims under 42 U.S.C. § 1983 against a number of private individuals for allegedly violating his constitutional rights. For the

---

[3] He provides first names only for two of the Doe defendants. (ECF No. 18 at 30-31 ¶¶ 4, 6.)

4

reasons explained to him in the above passage, such claims are not capable of review or determination in federal court. Accordingly, Plaintiff's claims against the private parties Defendants Li, Brian and Luke Linehart, and the Doe Defendants who are private individuals and not government officials (i.e. parole and police officers), will be dismissed.

### B. Claims Against Parole and Police Defendants

The amended complaint also repeats the claims from the original complaint against Thomas Porter, a supervisor in the parole office in Ukiah, an un-named parole "co-supervisor," an unnamed parole "desk clerk," "Ukiah Parole," as Defendants. (ECF No. 18 at 4-6.) Plaintiff claims, as he did in the original complaint, Porter violated his constitutional rights by "putting [him] behind bars illegally," "threatening" him, "br[eaking] his heart," and causing him to be "kicked out" of his home and lose his personal property. (ECF No. 18 at 29-30 ¶ 2.) Plaintiff claims the "co-supervisor" of the Ukiah parole office "coerced" him into taking a drug test that had a "false positive" result and required him to sign an admission to drug use based upon the parole results. (*Id.* at 14 ¶ 16; 31 ¶ 7.) He claims the parole unit's "desk clerk" made "racist yellow fever" remarks. (*Id.* at 31 ¶¶ 8.) He also names "Ukiah Parole" for "endorsing" the above conduct. (*Id.* at 31 ¶ 9.)

The amended complaint, like the original complaint, claims Plaintiff was "illegally" arrested and searched by the UPD and two unnamed police officers, and that they "refused his requests to inspect [his] bedroom for cameras" or search his computer for viruses. (*Id.* at 1 ¶ I; 16 ¶ 20; 32 ¶¶ 13-15.)

#### 1. Injunctive Relief

As in the original complaint, Plaintiff seeks an injunction ordering Defendants to "cease" his convictions and jail and parole terms, and to "clean [his] record."[4] (*Id.* at 33 ¶ 2.) The Court previously explained why such injunctive relief is not capable of judicial determination in this civil rights action:

---

[4] As he did in the original complaint, Plaintiff also seeks to have the Court bring criminal charges against some of the private defendants for the murder of a son of a tenant. (*Id.* at 34 ¶ 7.) As explained in the prior order, this Court does not have authority to file criminal charges. (ECF No. 15 at 6 n.4.)

5

> "'Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. Challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus.'" *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004)). Habeas is the "exclusive remedy" for the inmate who seeks "'immediate or speedier release'" from confinement. *Skinner v. Switzer*, 562 U.S. 521, 533-34 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)). Plaintiff must bring any claims seeking release from confinement on the basis of a violation of his federal constitutional rights in a petition for a writ of habeas corpus, not in a complaint under Section 1983. So, Plaintiff's claims for release from jail on the grounds that his conviction and sentence for violating parole are unlawful are dismissed without prejudice to bringing them in a petition for a writ of habeas corpus.[]

(ECF No. 15 at 5:3-15.) For the same reasons, the amended complaint's claims to be released from jail and vacate his convictions are not capable of judicial determination in this civil rights action.

### 2. Searches and Arrests

The Court explained as follows why the claims in the original complaint for damages for unlawful parole searches and arrests for parole violations are not capable of judicial determination:

> As for the searches, the Fourth Amendment does not prohibit an officer from conducting a suspicionless search of a parolee. *Samson v. California*, 547 U.S. 843, 851-56 (2006) (finding that suspicionless search of parolee, conducted under the authority of a California statute requiring that every prisoner eligible for release on state parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause," did not violate the Fourth Amendment). A law enforcement officer need only have probable cause to believe that a person is on active parole before conducting a suspicionless search or seizure. *United States v. Estrella*, 69 F.4th 958, 961 (9th Cir. 2023).[5] It is not clear from the complaint what Plaintiff's theory is as to how the searches were illegal. There are no allegations suggesting the Parole Defendants or UPD officers lacked a reasonable basis for believing he was on parole, which he clearly alleges was the case. To the

---

[5] In addition, a municipal government entity such as the UPD can only be held liable under Section 1983 if a plaintiff shows (1) "a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Plaintiff has alleged no UPD policy or facts plausibly establishing the third or fourth elements of a municipal liability claim against the UPD.

> extent he is claiming drug testing or other searches violated his Fourth Amendment rights because they lacked probable cause or reasonable suspicion, such claims fail as a matter of law under *Samson*.
>
> With respect to his arrests, Plaintiff alleges he was arrested for parole violations for drug use, drug possession, and having a knife. "[P]robable cause is not required to arrest a parolee for a violation of parole." *Sherman v. United States Parole Comm'n.*, 502 F.3d 869, 884 (9th Cir. 2007). Instead, a parole officer may arrest a parolee if the officer "reasonably believes a parolee is in violation of [her] parole." *United States v. Rabb*, 752 F.3d 1320, 1324 (9th Cir. 1984). Plaintiff's allegations the drug testing was "harassing/illegal," he was "illegally detained," and the UPD conducted a "spammed" search (ECF No. 1 at 8 ¶ 28; 13 ¶ 46; 17 ¶ 66.555) are conclusory and as such are insufficient under *Twombly* to state a "plausible" claim for the violation of his rights. 550 U.S. at 570.
>
> Plaintiff does not allege facts plausibly establishing UPD officers or the Parole Defendants did not reasonably believe Plaintiff violated his parole. Plaintiff's allegations that the test results were false-positives, the knife was a kitchen knife, and the white powder was a vitamin, even if true, do not, without more, support a plausible inference that the UPD officers or Parole Defendants did not have a reasonable belief the positive drug tests results, his possession of a knife, or the large pile of white powder in his room violated the terms of his parole when they arrested him. To the extent Plaintiff argues he did not violate parole, such arguments may be appropriate for trial, direct appeal, or a habeas petition, but are not grounds for a civil rights claim.

(*Id.* at 5:20-7:2.)

The amended complaint does not cure these deficiencies in his claims of unlawful searches and arrests. With respect to the searches, Plaintiff makes no allegations supporting a reasonable inference Defendants lacked probable cause to believe Plaintiff was on parole, which is all that was required for a lawful search of Plaintiff as a parolee. *See Samson v. California*, 547 U.S. 843, 851-56 (2006). Plaintiff simply reiterates his allegations that parole officials and UPD officers tested him for drug use and searched his room, which, as explained in the above passage, does not state a plausible claim for an unlawful parole search under the Fourth Amendment.[6]

---

[6] In his "objections" to the order dismissing the original complaint with leave to amend, Plaintiff argues the searches were "harassing" not that they were "warrantless." (ECF No. 16 at 5.) Plaintiff cites *People v. Cervantes*, 11 Cal.App.5th 860 (2017), but that decision does not address harassing parole searches. It address the constitutionality of vehicle searches based on a passenger's probation (not parole) status, *see id.* at 871-72, which are not at issue here. Plaintiff's assertion that the searches were "harassing" because "drug testing alone should be illegal" lacks any authority of which the Court is aware, and his argument that he "was searched about five

7

With respect to his arrests, the amended complaint does not allege facts supporting a reasonable inference Defendants lacked a reasonable belief that he violated the terms of his parole, which is all that is required for the arrests to be lawful, *see United States v. Rabb*, 752 F.3d 1320, 1324 (9th Cir. 1984). Rather, the amended complaint repeats the allegations he tested positive for illegal drugs and that police officers found a "massive bag" of powder in his room and a knife on his person (ECF No. 18 at 14 ¶ 16, 23 ¶ 33, 26 ¶ 41); as explained in the prior order, these discoveries gave arresting officers ample reasonable belief Plaintiff had violated the terms of his parole. The same is true for Plaintiff's allegation that he was arrested and jailed for purse theft when the police found a stolen purse in the "homeless cart [Plaintiff] was pushing around" (*id.* at 28 ¶ 42); the stolen purse found in Plaintiff's possession gave the officers probable cause to arrest him for violating parole and/or theft.[7] Plaintiff's allegations that the drug test results were false-positives, that the powder was Vitamin E, and that the owner of the purse "seemed to of [sic] left her purse" in his cart (*id.*) relate to the validity of his conviction for violating parole. As such, as explained in the above-quoted passage, these arguments are appropriate for trial, appeal, and/or a habeas petition, not a civil rights action. For these reasons, the amended complaint does not state a plausible claim that is capable of judicial determination for unlawful arrest under the Fourth Amendment.

3. Other Claims

The Court also explained why Plaintiff's allegations of threats by the parole defendants do not state a plausible claim for the violation of Plaintiff's constitutional rights.

> Plaintiff's allegations of "threats" also do not state a claim that is capable of judicial determination. His threat allegations are vague, conclusory, and do not support a plausible inference the arrest was unlawful because Defendants lacked probable cause to believe he had violated the terms of parole, as *Rabb* requires. He alleges his

---

random times in a row . . . without them ever finding anything" (ECF No. 16 at 6) is contradicted by allegations in the amended complaint of positive drug test results and a large pile of white powder, a knife, and a stolen purse in Plaintiff's possession. The Court has reviewed the remainder of the "objections" and finds them inapplicable and unpersuasive.

[7] Plaintiff's continued assertions that the drug test results were false-positives and the powder was Vitamin E relate to the validity of his conviction for violating parole. As such, as explained in the above-quoted passage, these arguments are appropriate for trial, appeal, and/or a habeas petition, not a civil rights action.

> "parole violation sentences" were "signed under threat" (ECF No. 1 at 18 ¶ 68), but he does not allege what he signed or how he was threatened. To the extent Plaintiff refers to a parole supervisor requiring him to submit to a drug urinalysis "under threat of jailtime" (*id.* at 8 ¶ 28), the Court is not aware of any constitutional prohibition on drug-testing as a condition of parole. His allegations that Porter shouted, "'Go die already!' while threatening me" and that Porter was "jealous[]" (*id.* at 17 ¶ 16.55555; 18 ¶ 68) are insufficient because he does not allege what the threat was or how such threat precluded Porter from having a reasonable belief that he had violated parole.

(ECF No. 15 at 7:3-13.)

The amended complaint repeats the same allegations of threats by Defendants Porter and the unnamed parole officials. (*See* ECF No. 18 at 14 ¶ 16 (alleging unnamed parole co-supervisor required him to submit to drug test and sign admission to positive result for methamphetamine under threat of jail time); 27 ¶ 42 (alleging Porter shouted at him to "Go die already!").) Like the original complaint, the amended complaint does any not provide any authority that requiring drug tests and admitting their positive results are unconstitutional parole conditions, nor does Plaintiff allege what threat Porter made or how any such threat rendered the searches and arrests unlawful. Plaintiff also alleges Porter "endorsed the threatening of my life" by some of the private individual Defendants (*id.* at 29 ¶ 2), but this allegation is merely conclusory because Plaintiff does not allege how Porter endorsed their threats. As a result, the allegations do not support a reasonable inference Porter participated in any threats by the private individual Defendants.

Plaintiff also complains UPD officers refused to search his "computers for viruses" or his room for cameras Plaintiff believed his former landlady and co-tenants used to "spy on" him. (*Id.* at 1 ¶ I; 16 ¶ 20; 32 ¶ 14.) The Court is aware of no authority that he had a constitutional right to have the police search his computers or room. The Court is also not aware of any authority Defendants violated his constitutional rights by "breaking his heart" (*id.* at 30 ¶ 2) or making "yellow fever remarks"[8] at him. (*id.* at 31 ¶ 8). (*See also* ECF No. 15 at 13:15 ("The Court is also not aware of any authority that the alleged gossiping, screaming, or laughter by the Parole Defendants (*id*. at 8 ¶ 27; 17 ¶ 16.5555) violated his constitutional rights.").)

## CONCLUSION

---

[8] Plaintiff does not allege he is Asian, but rather that he "likes Asians." (ECF No. 18 at 3:2.)

9

For the reasons discussed above, the amended complaint does not cure the deficiencies in his original complaint and does not state a claim that is capable of judicial determination. Accordingly, this case is DISMISSED without further leave to amend.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: October 31. 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge